| | | |
|---|---|---|
| **WINFIELD T. WILLIS** | * | IN THE |
| 2816 Hillsdale Road | | |
| Baltimore, MD 21207 | * | |
| | | |
| **Plaintiff,** | * | CIRCUIT COURT |
| | | |
| **VS** | * | |
| | | |
| **Green Tree Servicing LLC** | | |
| 300 Landmark Towers | * | FOR |
| 345 St. Peter Street | | |
| St. Paul, MN 55102 | * | |
| | | |
| **Defendant** | * | |
| | | BALTIMORE CITY |
| **Serve on:** | | |
| **Resident Agent in Maryland** | * | |
| **The Corporation Trust Incorporated** | | |
| 351 West Camden Street | * | |
| Baltimore, Maryland 21201 | | CASE #: 24-C-14-005903 |
| | * | |
| | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## COMPLAINT
### AND
### DEMAND FOR JURY TRAIL

Plaintiff, Winfield Willis, in this matter, hereby submits this Complaint and

Demand for Jury Trail, and states as follows:

### BACKGROUND

1. Plaintiff, Winfield Willis, is an individual who resides at 2816 Hillsdale Road,

   Baltimore, Maryland 21207.

2. Defendant, Green Tree Servicing LLC, is a Delaware limited liability company with

   its principal office located in Minnesota. Defendant is owned by Walter Investment

   Management Corporation which is a Maryland corporation with principal offices in

   Florida.

1

**EXHIBIT**

A – Complaint

3.  Therefore, no jurisdiction diversity of citizenship exist between the Plaintiff and Defendant under 28 U.S.C.1367.

4.  Defendant is assumed to have acquired the right of servicing an alleged loan to the Plaintiff from Bank of America N.A. and Countrywide Home Loans in which the alleged loan was classified as a default loan at the time the Defendant began servicing the alleged loan.

5.  Therefore, the Defendant is considered a "debt collector" under the Fair Debt Collection Practices Act, 15 U.S.C. 1692.

6.  On or about June 2, 2014, the Plaintiff received a hand carried copy of the foreclosure documents from the Defendant's Attorney, Samuel I. White, P.C., without any notification that the Defendant was taking over the servicing from the previous servicer.

7.  In the foreclosure documents, the Defendant included an "Assignment of the Deed of Trust" (Exhibit A) from Bank of America, NA to the Defendant which was dated June 6, 2013.

8.  Also, in the foreclosure documents, the Defendant stated in the "Affidavit of Default and Mailing of Notice of Intent to Foreclosure" (Exhibit B), notarized on February 28, 2014, under item 3 that "A notice of Intent to Foreclose packet was sent on 10/10/13 in accordance with Maryland Code Real Property 7-105.1(C) to the Mortgagor(s) or Grantor(s) in accordance with Maryland Code Real Property 7-105.1(c)".

9.  The Plaintiff never received any documents from the Defendant before the hand delivery of the foreclosure documents by the foreclosure Attorney, Samuel I. White.

10. The first time the Plaintiff spoke with Defendant was on September 19, 2014. During that conversation, Maria Alvarado who is employed by the Defendant, stated that all documents concerning Plaintiff's file were being mailed to 3834 Pensacola Drive, Baton Rouge, LA 70814. Maria Alvarado stated that this Baton Rouge address was the official mailing address on the file.

11. Plaintiff and no one in Plaintiff's family has ever lived in or visited Baton Rouge, LA.

12. Therefore, Defendant violated the Consumer Financial Protection Act by not notifying Plaintiff within 30 days that the servicing of the allege loan had transferred to the Defendant on June 6, 2013; not sending periodic monthly statements to the Plaintiff in accordance with 1026.41; and not establishing early intervention with delinquent consumers in accordance with 1024.39. Defendant had wrong mailing address on file so Defendant never properly notified Plaintiff.

13. The Defendant also violated Maryland Code Real Property 7-105.1(c). Defendant mailed "a notice of Intent to Foreclose packet" to the wrong address in Baton Rouge, LA so Plaintiff was never properly notified in accordance with 7-105.1 (c )

14. Also, the Defendant did not contact the Plaintiff in reference to the June 6, 2013 assignment (Exhibit A) until after almost one year which is a violation of RESPA.

15. Defendant also included a signed "Final Loss Mitigation Affidavit" (Exhibit C) in the foreclosure documents which stated that Defendant could not contact the Plaintiff to complete a loss mitigation analysis for several different types of modification programs. The reason the Defendant could not contact the Plaintiff is because Defendant was mailing documents to the wrong address. Instead of mailing to the property address, the Defendant mailed all documents to the Baton Rouge, LA

3

address Defendant had on file as the mailing address of the Plaintiff.

16. In addition to having the wrong mailing address on the Plaintiff's file, the Defendant included several material misrepresentations, irregularities and false statements in the foreclosure documents.

17. The "Final Loss Mitigation Affidavit" (Exhibit C) states that Patricia Lewis is a Borrower along with the Plaintiff when Patricia Lewis has never signed a Note in this allege loan transaction.

18. The Defendant also states in a foreclosure document which states " the following is important information about your mortgage loan" (Exhibit D) that Patricia Lewis is a Borrower but Patricia Lewis has never signed a Note in this allege transaction.

19. The Defendant also includes Patricia Lewis as the lead Defendant throughout the foreclosure filing when Patricia Lewis has never signed a Note in the alleged transaction.

20. The alleged January 2, 2006 Note (Exhibit E) included in the foreclosure documents by the Defendant does not including any signature by Patricia Lewis, therefore, Defendant's do not having any standing to include Patricia Lewis as a Borrower in this alleged transaction.

21. Defendant also included an alleged January 2, 2006 Deed of Trust (Exhibit F) in the foreclosure along with an "Affidavit Made Pursuant To Section 12-108(G)(3)" (Exhibit G) which was signed and notarized on December 16, 2005, the only date the Plaintiff remembers signing any documents.

22. The Plaintiff never signed any documents on January 2, 2006.

23. The Plaintiff signed a HUD 1 (Exhibit H), a Note (Exhibit I) and a Deed of Trust

4

(Exhibit J) on December 16, 2005 at Plaintiff's home.

24. Therefore, the Defendant filed false, fabricated and counterfeit loan documents dated January 2, 2006 in its foreclosure filing which renders the documents invalid and unenforceable.

25. The foreclosure documents filed by the Defendant also included an "Affidavit of Deed of Trust Debt and Right to Foreclosure" (Exhibit K) where the Defendant certifies that the debt remaining and payable as of November 29, 2013 is $501,196.36. If the Defendant received the assignment of the file on June 6, 2013 as stated in the "Assignment of the Deed of Trust" (Exhibit A), it is not possible for the Defendant to have personal knowledge that any of the charges and fees, etc. are correct and reasonable charges from 2006 to June 6, 2013 when the Defendant received assignment of the file.

26. The Defendant included a "Schedule of Charges" (Exhibit L) in the foreclosure documents to support this allegation that $501,196.36 in fees and charges were due by Plaintiff. Although, none of the numbers in the schedule support the Defendant's certification of the amount due, and more paramount, the numbers do not have any calculations which result in a $501,196.36.

27. The "Schedule of Charges"(Exhibit L) has 50 charges with the same amount all charged on the same transaction date of February 8, 2013, and approximately 60 other charges of varies random amounts which do not have any dates or explanation of the type of charge. Other charges included in the schedule also appear excessive.

28. These misrepresentations and irregularities by the Defendant are material because the excessive and misrepresented charges have increased an alleged $335,000 principal

balance to $501,196.36 according to the Defendant, a difference of $166,196.36.

29. The Defendant's foreclosure documents also included an Affidavit Certifying Ownership of the Note and stated that the Federal National Mortgage Association was the owner of the Note with a loan account number of xxxx5114 (see Exhibit N). This loan account number is not the same as the loan number included in the other foreclosure documents provided by the Defendant, and no evidence of an assignment or purchase of the Note by Federal National Mortgage Association with a date of transfer were included in the foreclosure documents.

30. On the back page of the forged January 2, 2006 Note (Exhibit E page 4 Allonge) from the Defendant's foreclosure documents, there were three "Pay to the Order of " stamps without any dated annotated by the signature on each stamp and one of the stamps had a blank line for the pay to the order of entity.

31. Due to these "Pay to the Order of" stamps" not" including any date, the Defendant's name, or Federal National Mortgage Association; these stamps appear to be "robo signing" and false fabrications without any clear indication of who currently owns the fraudulent Note.

32. Therefore, without any clear evidence of who owns the fraudulent Note and fraudulent Deed of Trust, the Defendant lacks any "Standing" to proceed with the foreclosure process.

33. Due to Defendants actual malice, deceptive trade practices, and falsification of documents, the Plaintiff has been damaged.

COUNT I
(Deceptive Trade Practices)
Notification as New Servicer

34. Plaintiffs incorporates by reference herein, all of the allegations contained in paragraphs one (1) through thirty three (33) of this complaint as if fully set forth herein.

35. Defendant included in foreclosure documents presented to the Plaintiff a copy of an assignment of a fraudulent Deed of Trust (Exhibit A) dated June 6, 2013 which requires the Defendant to notify the Plaintiff within 30 days that a new servicer is managing the alleged loan.

36. The Defendant never send any mortgage statements or any other correspondence to the Plaintiff until on or about June 2, 2014 when the Plaintiff received a copy of the foreclosure documents from the Defendant's Attorney, Samuel I. White, P.C. without any notification that the Defendant was taking over the serving from the previous servicer approximately one year after obtaining the assignment.

37. During that time after the assignment on June 6, 2013, the Plaintiff was still trying to resolve issues with Bank of America NA who was believed to be the servicer on the account.

38. The first time Plaintiff spoke with defendant was on September 19, 2014.  During that conversation, Maria Alvarado who is employed by the Defendant, stated that all documents concerning Plaintiff's file were being mailed to 3834 Pensacola Drive, Baton Rouge, LA 70814. Maria Alvarado stated that this Baton Rouge address was the official mailing address on the file.

39. Plaintiff and no one in Plaintiff's family has ever lived in or visited Baton Rouge, LA.

40. By virtue of the Defendant's position as a bank, mortgage company, and/or loan servicing company initiating and servicing the alleged loan of the Plaintiff, the Plaintiff reposed trust and confidence in the Defendant to abide by the laws governing servicers.

41. The Defendant illegally and deliberately mislead, and concealed the facts, and deceived Plaintiff in reference to not notifying the Plaintiff within 30 days of assignment that Defendant was new servicer for the alleged loan.

42. MD 13-301 clearly states that any "representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers" is a violation of Unfair or Deceptive Trade Practices including concealment of facts.

43. In reference to the Plaintiff's punitive damage claim, the Plaintiff states that the Defendant did utilize "actual malice" in all Counts in the Complaint which request for punitive damages.

44. In reference to the Defendants' Unfair and Deceptive Trade Practices, Plaintiff suffered damages.

      Wherefore, the Plaintiff demands judgment against the Defendants in the sum of Six Hundred Thousand Dollars ($600,000) in compensatory damages, One Million Dollars ($1,000,000) in punitive damages, an order from the Court for the Defendant to cease and desist not notifying borrowers within 30 days of changing servicers, and other further relief as this Court deems proper.

## COUNT II
### (Violation of Consumer Financial Protection Act & RESPA)
### New Servicer

45. Plaintiffs incorporates reference herein, all of the allegations contained in paragraphs

     one (1) forty four (44) of this complaint as if fully set forth herein.

46. Due to Defendant having 3834 Pensacola Drive, Baton Rouge, LA 70814 on file as

     the official contact address of the Plaintiff, the Defendant violated several Consumer

     Financial Protection Act laws because Plaintiff or any member of Plaintiff's family

     has never lived or been to Baton Rouge, LA.

47. Defendant violated the Consumer Financial Protection Act by not notifying Plaintiff

     within 30 days that the servicing of the alleged loan had transferred to the Defendant

     on June 6, 2013; not sending periodic monthly statements to the Plaintiff in

     accordance with 1026.41; and not establishing early intervention with delinquent

     consumers in accordance with 1024.39.

48. Defendant also violated  RESPA by not contacting the Plaintiff for almost one year

     after obtaining an Assignment of the Deed of Trust (Exhibit A) on June 6,

     2013.

     Wherefore, the Plaintiff demands judgment against the Defendants in the sum

     of  Six Hundred Thousand Dollars ($600,000) in compensatory damages,  One

     Million Dollars ($1,000,000) in punitive damages, an order from the Court for the

     Defendant to cease and desist not notifying Plaintiff at correct address, and other

     further relief as this Court deems proper.

COUNT III
(Deceptive Trade Practices)
Final Loss Mitigation Affidavit

49. Plaintiffs incorporates reference herein, all of the allegations contained in paragraphs

one (1) forty eight (48) of this complaint as if fully set forth herein.

50. Defendant included a signed "Final Loss Mitigation Affidavit" (Exhibit C) in the

foreclosure documents which stated that Defendant could not contact the Plaintiff to

complete a loss mitigation analysis for several different types of modification

programs.

51. The reason Defendant could not contact the Plaintiff was because Defendant was

mailing documents to the wrong address.

52. Instead of mailing correspondence to the foreclosure subject property address in

which the Plaintiff occupied for over 20 years, the Defendant deceitfully attached

some unrelated address to the file in order to file false affidavits in the foreclosure

process which did not give Plaintiff proper notices or communication in accordance

with servicing and foreclosure laws.

53. These deceiving and misleading acts by the Defendant against the Plaintiff are in

violation of Md13-301 deceptive trade practices, and as a result of the Defendant's

conduct, the Plaintiff has suffered damages.

Wherefore, the Plaintiff demands judgment against the Defendants in the sum

of Six Hundred Thousand Dollars ($600,000) in compensatory damages, One

Million Dollars ($1,000,000) in punitive damages, an order from the Court for the

Defendant to cease and desist not notifying Plaintiff at correct address, and other

further relief as this Court deems proper.

COUNT IV
(Deceptive Trade Practices)
Standing – Patricia Lewis

54. Plaintiffs incorporates reference herein, all of the allegations contained in paragraphs one (1) fifty three (53) of this complaint as if fully set forth herein.

55. In addition to Defendant having the wrong mailing address on the Plaintiff's file, the Defendant included several material misrepresentations, irregularities and false statements in the foreclosure documents.

56. The "Final Loss Mitigation Affidavit" (Exhibit C) filed by the Defendant states that Patricia Lewis is a Borrower along with the Plaintiff when Patricia Lewis has never signed a Note in this alleged loan transaction.

57. The Defendant also states in a foreclosure document which states "the following is important information about your mortgage loan" (Exhibit D) that Patricia Lewis is a Borrower when Patricia Lewis has never signed a Note in the alleged transaction.

58. The Defendant also included Patricia Lewis as the lead Defendant throughout the foreclosure filing when Patricia Lewis never signed a Note to the alleged transaction and never applied for a loan in the alleged transaction.

59. The alleged January 2, 2006 Note (Exhibit E) included in the foreclosure documents by the Defendant does not include any signature by Patricia Lewis; therefore, Defendant does not have any "Standing" to include Patricia Lewis as a borrower in the foreclosure documents or in this alleged transaction.

60. Due to the Defendant's false statements and misrepresentation of foreclosure documents as to the borrower on this alleged transaction, the Defendant has violated MD13-301 deceptive trade practices.

Wherefore, the Plaintiff request the Court to dismiss the foreclosure proceeding due to Defendant having the wrong party as borrower on the foreclosure documents which creates a lack of standing to proceed with the foreclosure process, and to provide any other relief as this Court deems proper.

COUNT V
(Breach of Contract & Common Law Fraud)
Forged Loan Documents

61. Plaintiffs incorporates reference herein, all of the allegations contained in paragraphs one (1) sixty (60) of this complaint as if fully set forth herein.

62. When reviewing the foreclosure documents submitted by Defendant in the foreclosure proceeding, "the Affidavit Made Pursuant to Section 12-108(G)(3) of the Tax Property Article of the Annotated Code of Maryland (Exhibit G), had a signature and notarized date of December 16, 2005.

63. Plaintiff records include a HUD 1 (Exhibit H), a Deed of Trust (Exhibit J), and a Note (Exhibit I) which were all signed on December 16, 2005 in the Plaintiff's home along with Exhibit G cited in item 62 above.

64. The Note (Exhibit E) and the Deed of Trust (Exhibit F) included the Defendant's foreclosure documents included a signature date of January 2, 2006.

65. Therefore, the Defendant filed false, fabricated and counterfeit loan documents dated January 2, 2006 in its foreclosure filing which renders the documents invalid and unenforceable.

66. The Note and Deed of Trust are considered specialty instruments in accordance with MD 5-102(a) which provides a twelve year statue of limitations

67. Due to the January 2, 2006 dated Note (Exhibit E) and Deed of Trust (Exhibit F)

being falsified, forged and misrepresented by the Defendant, both of these specialty

instruments are invalid and unenforceable.

68. Defendant actually changed the date and applied the signature of the Plaintiff to the

Note (Exhibit E) and the Deed of Trust (Exhibit F) to the date of January 2, 2006 and

notarized some of the signatures.

69. The Plaintiff never signed the Note or Deed of Trust on January 2, 2006, therefore,

the Defendant's robo-signing of these documents were fraudulent and/or intentional

misrepresentation.

70. The Note specifically states on page 3, "Witness the Hands and Seal(s) of

the Undersigned"; therefore, because the Plaintiff did not sign the Note on January 2,

2006 as cited in the Note which was recorded by the Defendants, the Note is invalid

and unenforceable.

71. The Deed of Trust specifically states on page 13, "In Signing Below, Borrower

accepts and agrees to the terms and covenants contained in this Security Instrument

and in any Rider executed by Borrower and recorded with it"; therefore, because the

Plaintiff did not sign the Deed of Trust on January 2, 2006 as cited in the Deed of

Trust which was recorded by the Defendants, the Deed of Trust is invalid and

unenforceable.

72. Defendants breached their contractual obligations for the Note and Deed of Trust by

not disclosing to the Plaintiff that the Defendants fraudulently and/or intentionally

misrepresented the fact that the Defendant's illegally affixed the Plaintiff's signature

to the Note and Deed of Trust dated January 2, 2006.

73. Defendants malicious act has caused the Plaintiff damages.

13

Whereas, the Plaintiff demands judgment against the Defendants in sum of Six Hundred Thousand Dollars ($600,000) in compensatory damages; an order from the Court rendering the Note and Deed of Trust null and void with the Defendant ordered to transfer title to the Plaintiff free and clear of any liens; an order from the Court for Defendant to provide Plaintiff a letter of Satisfaction of all Debt associated with the Note and Deed of Trust; and other further relief as this Court deems proper.

## COUNT VI
### (Constructive Fraud)
### Forged Loan Documents

74. Plaintiffs incorporates reference herein, all of the allegations contained in paragraphs one (1) seventy three (73) of this complaint as if fully set forth herein.

75. Defendant forged the Plaintiffs signatures on the Note and Deed of Trust dated January 2, 2006 and recorded the instruments for public record.

76. Defendant had a legal and equitable duty not to forge and record false documents.

77. Due to Defendant positon as a lender and servicer, Plaintiff had trust and confidence that the Defendant would have all documents to a loan transaction properly executed.

78. Defendant breached their legal and equitable duty by forging the Plaintiff's signature on the Note and Deed of Trust dated January 2, 20006.

79. Defendant's conduct deceived the Plaintiff and violated the Plaintiff's confidence in the Defendant.

80. Due to Defendant's Constructive Fraud and malicious acts of illegally signing the Note and Deed of Trust dated January 2, 2006, the Plaintiff has suffered damages and these two illegally signed specialty instruments should be declared invalid and

14

unenforceable.

Whereas, the Plaintiff demands judgment against the Defendant in sum of

Six Hundred Thousand Dollars ($600,000) in compensatory damages; an order

from the Court rendering the Note and Deed of Trust null and void with the

Defendant ordered to transfer title to the Plaintiff free and clear of any liens; an

order from the Court for Defendant to provide Plaintiff a letter of Satisfaction of

all Debt associated with the Note and Deed of Trust; and other further relief as

this Court deems proper.

COUNT VII
(Violation of MD Real Estate Code Rule 7-402 &7-407(c))
Forged Loan Documents

81. Plaintiffs incorporates reference herein, all of the allegations contained in paragraphs

one (1) eighty (80) of this complaint as if fully set forth herein.

82. Defendant forged the Plaintiffs signatures on the Note and Deed of Trust dated

January 2, 2006 and recorded the instruments for public record.

83. Defendant had a legal and equitable duty not to forge and record false documents.

84. Due to Defendant forging loan documents, the Defendant committed mortgage fraud

in violation of Rule 7-402 with a pattern of constructive mortgage fraud in

accordance with Rule 7-407(c) which allows treble damages in restitution to the

Plaintiff in accordance to Rule 7-406.

Whereas, the Plaintiff demands a treble damage judgment against the

Defendant in sum of One Million Eight Hundred Thousand Dollars ($1,800,000) in

Compensatory damages; an order from the Court rendering the Note and Deed of Trust

null and void with the Defendant ordered to transfer title to the Plaintiff free and clear of

15

any liens; an order from the Court for Defendant to provide Plaintiff a letter of

Satisfaction of all Debt associated with the Note and Deed of Trust; and other further

relief as this Court deems proper.

COUNT VIII
(Deceptive Trade Practices)
Fraudulent Accounting

85. Plaintiffs incorporates reference herein, all of the allegations contained in paragraphs

one (1) eighty four (84) of this complaint as if fully set forth herein.

86. The foreclosure documents filed by the Defendant also included an "Affidavit of

Deed of Trust Debt and Right to Foreclosure" (Exhibit K) where the Defendant

certifies that the debt remaining and payable as of November 29, 2013 is

$501,196.36. If the Defendant received the assignment of the file on June 6, 2013 as

stated in the "Assignment of the Deed of Trust" (Exhibit A), it is not possible for the

Defendant to have personal knowledge that any of the charges and fees, etc. are

correct and reasonable charges from 2006 to June 6, 2013 when the Defendant

received assignment of the file.

87. The Defendant included a "Schedule of Charges" (Exhibit L) in the foreclosure

documents to support this allegation that $501,196.36 in fees and charges were due

by Plaintiff. Although, none of the numbers in the schedule support the Defendant's

certification of the amount due, and more paramount, the numbers do not have any

calculations which result in a $501,196.36.

88. The "Schedule of Charges"(Exhibit L) have 50 charges with the same amount all

charged on the same transaction date of February 8, 2013, and approximately 60 other

charges of varies random amounts which do not have any dates or explanation of the

16

type of charge. Other charges included in the schedule also appear excessive.

89.  These misrepresentations and irregularities by the Defendant are material because the excessive and misrepresented charges have increased an alleged $335,000 principal balance to $501,196.36 according to the Defendant, a difference of $166,196.36.

90.  Due to the Defendant's misrepresentations and fabrications of the foreclosure accounting of the alleged debt in the foreclosure documents, and the deceptive acts of charging unwarranted fees, the Plaintiff suffered damages in the amount of $166,196.36.

Wherefore, the Plaintiff demands judgment against the Defendant in the sum of One Hundred Sixty Six Thousand One Hundred Ninety Six Dollars and Thirty Six Cents ($166,196.36) in compensatory damages, and an order from the Court to dismiss the foreclosure filing for improper accounting.

COUNT IX
(Deceptive Trade Practice)
Standing

91.  Plaintiffs incorporates by reference herein, all of the allegations contained in paragraph one (1) through ninety (90) of this complaint as if fully set forth herein.

92.  Defendants included false statements in the foreclosure filing. The Substitute Trustees (Exhibit M) states that Green Tree Servicing, LLC is the holder of the Note. The Affidavit Certifying Ownership of Note (Exhibit N) states that Fannie Mae is the owner of the Note with a different loan number on the certification. The Deed of Trust (Exhibit F) states that Bondcorp Realty Service, Inc. is the lender and MERS is the nominee for the Lender even though Bondcorp Realty Services, Inc. is not a

member of MERS.

93. Defendant's Deed of Trust assignments included in Exhibit D and Exhibit E do not Include any assignment to Fannie Mae and no evidence or agreement is included that gives the Defendant the right to foreclose for any entity including Fannie Mae.

94. On the back of the forged January 2, 2006 Note (Exhibit E page 4) from the Defendant's foreclosure documents, there were three "Pay to the Order of" stamps (Exhibit E page 4 Allonge) without any date annotated by the signature stamps.

95. Due to these "Pay to the Order of" stamps not including any date in which the stamps were applied and signed, not including the name of the Defendant anywhere on these stamps, and not including any reference to the Federal National Mortgage Association; the stamps appear to be "robo signing" and false fabrications without any clear indication of who currently owns the fraudulent Note.

96. The un-dated stamps on the rear of the Note did not assign the Note to Fannie Mae. Therefore, the Defendant has not included any evidence of who purchased the Note and who owns the Deed of Trust, and more paramount, who has Standing to foreclose under the fraudulent Note and fraudulent Deed of Trust.

97. Defendant has merely stated that they have authority to foreclose without showing any evidence of Note purchase or agreements to act on behave of any stated party.

98. Therefore, without any clear evidence of who owns the fraudulent Note and fraudulent Deed of Trust, the Defendant lacks any "Standing" to proceed with the foreclosure process.

99. The Defendant illegally and deliberately mislead, and concealed the facts, and deceived Plaintiff in reference to who was the actual lender and owner of the

fraudulent Note and fraudulent Deed of Trust.

100. MD 13-301 clearly states that any "representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers" is a violation of Unfair or Deceptive Trade Practices including concealment of facts.

101. In reference to the Defendant's Unfair and Deceptive Trade Practices and actual malice, Plaintiff suffered damages.

Wherefore, the Plaintiff demands judgment against the Defendant in the sum of Six Hundred Thousand Dollars ($600,000) in compensatory damages, an order from the Court declaring that Plaintiff is released from any alleged obligation to the Defendant, and an order from the Court dismissing the foreclosure proceedings due to the Lack of Standing.

## COUNT X
### (Violation of Fair Debt Collection Practices Act)
### Robo Signing

102. Plaintiffs incorporates by reference herein, all of the allegations contained in paragraph one (1) through one hundred one (101) of this complaint as if fully set forth herein.

103. Plaintiff is a "consumer" as that term is defined by Fair Debt Collection Practices Act (FDCPA). 15 U.S.C. 1692a(3).

104. Plaintiff's alleged mortgage on real property, that is owner occupied by a natural person, is a "debt" as defined by FDCPA, 15U.S.C. 1692a(5).

105. Defendant is a "debt collector" as that term is defined by FDCPA. 15 U.S.C. 1692a(6) and Wilson v. Draper Goldberg. P.L.L.C., 443 F.3d 373 (4th Cir (2006)).

106.Defendant violated FDCPA (15 U.S.C. 1692e(5)) by threatening to take and actually

taking action that they could not take in that they docketed the Plaintiff's foreclosure

with the knowledge that they would  improperly supported the docketing with false,

fabricated, or counterfeit affidavits, note, deed of trust, and assignments, etc.

107.Every false, fabricated, or counterfeit affidavit, note, deed of trust and assignment,

etc. filed by Defendant in support of the docketing of the Plaintiff's foreclosure was a

false representation or a deceptive means to collect or attempt to collect a consumer

debt in violation of FDCPA. 15 U.S.C. 1692e(10) and 1692f.

108.During the dates relevant to this civil action, Defendant had the resources to have

properly and legally prosected Plaintiff's foreclosure; however, Defendant choose

to prosecute the Plaintiff's foreclosure illegally in order to maximize their profits

regardless of the risk and devastating financial and emotional consequences to the

Plaintiff and his family.

109.Plaintiff has suffered damages as the direct result of the violation of the FDCPA by

the Defendant and the actual malice by the Defendant.

Wherefore, the Plaintiff demands judgment against the Defendant in the sum of

Six Hundred Thousand ($600,000) in compensatory damages, One Million Dollars

($1,000,000) in punitive damages, and an order from the Court declaring that Plaintiff

is released from any alleged obligation to the Defendants.

COUNT XI
(Wrongful Foreclosure Filing)
Robo – Signing

110.Plaintiffs incorporates by reference herein, all of the allegations contained in

paragraph one (1) through one hundred nine (109) of this complaint as if fully

set forth herein.

111. Maryland Real Property Article 7-105.1 and 7-105.2 mandate that certain notices, documents, statements, and affidavits be provided to mortgagors, homeowners, and third parties during the foreclosure process.  Additionally, Maryland Real Property Article 7-105.1 and 7-105.2 mandate that certain of these notices, documents, statements, and affidavits be filed with the court in which the foreclosure is to be filed or has been filed.

112. Each requirement of 7-105.1 and 7-105.2 is a statutory condition precedent to docketing a foreclosure, conducting a foreclosure sale or ratifying a foreclosure sale.

113. Defendant failed to comply with the provisions of Maryland Real Property Article 7-105.1 and 7-105.2 in that Defendant knowingly and willfully filed false, fabricated, and counterfeit documents in support of the Order to Docket in Plaintiff's foreclosure docket.

114. Each such false, fabricated, or counterfeit affidavit was filed in lieu of an affidavit or statement required as a condition precedent.

115. Plaintiff suffered damages as a direct result of the failure of the Defendant to comply with the provisions and implementing rules of Real Property 7-105.1 and 7-105.2.

Wherefore, the Plaintiff demands judgment against the Defendant in the sum of Six Hundred Thousand ($600,000) in compensatory damages, One Million Dollars ($1,000,000) in punitive damages, and an order from the Court declaring that Plaintiff is released from any alleged obligation to the Defendant.

COUNT XII
(Violation of the Maryland Consumer Protection Act)
Robo – Signing and Forged Loan Documents

116. Plaintiffs incorporates by reference herein, all of the allegations contained in
paragraph one (1) through one hundred fifteen (115) of this complaint as if fully
set forth herein.

117. The foreclosure procedures utilized by the Defendant were consumer transactions as
defined in the Maryland Consumer Protection Act (MCPA).

118. Defendant negligently or intentionally engaged in deceptive and misleading practices
under the MCPA by: (a) negligently and/or intentionally omitting to sufficiently
verify and/or falsely certifying under "penalty of perjury" that information required
under Maryland law was true; (b) negligently and/or intentionally failing to give its
residents of Maryland due process required by Maryland law; and (c) Plaintiff,
alternatively, had a reasonable expectation created by Defendant that Defendant
would provide truthful Affidavits, notes, deed of trust, and assignments, etc. and
comply with Maryland law.

119. These negligent and/or intentional representations or failures to disclose were
relevant to an ordinary person and/or unsophisticated consumer; and information
negligently or intentionally concealed by the Defendant was material to the
Plaintiff's transaction.

120. This wrongful behavior and actual malice by Defendant in robo-signing and forging
the Note and Deed of Trust dated January 2, 2006 caused damages to the Plaintiff.

Wherefore, the Plaintiff demands judgment against the Defendant in the sum of

Six Hundred Thousand Dollars ($600,000) in compensatory damages, One Million

Dollars ($1,000,000) in punitive damages, and an order from the Court declaring that

Plaintiff is released from any alleged obligation to the Defendant.

COUNT XIII
(Violation of Fair Debt Collection Practices Act)
Forged Loan Documents

121. Plaintiff incorporates by reference herein, all of the allegations contained in

paragraph one (1) through one hundred twenty one (120) of this complaint as if

fully set forth herein.

122. Plaintiff is a "consumer" as that term is defined by Fair Debt Collection Practices

Act (FDCPA). 15 U.S.C. 1692a(3).

123. Plaintiff's alleged mortgage on real property, that is owner occupied by a natural

person, is a "debt" as defined by FDCPA, 15U.S.C. 1692a(5).

124. Defendant is a "debt collector" as that term is defined by FDCPA. 15 U.S.C.

1692a(6) and Wilson v. Draper Goldberg. P.L.L.C., 443 F.3d 373 (4th Cir (2006)).

125. Defendant violated FDCPA (15 U.S.C. 1692e(5)) by threatening to take and

actually taking action that they could not take in that they docketed the Plaintiff's

foreclosure with the knowledge that they had improperly supported the docketing

with false, fabricated, or counterfeit loan documents with the January 2, 2006 date.

126. Every false, fabricated, or counterfeit loan document filed by Defendant in support

of the docketing of the Plaintiff's foreclosure was a false representation or a

deceptive means to collect or attempt to collect a consumer debt in violation of

FDCPA. 15 U.S.C. 1692e(10) and 1692f.

127. Defendant choose to prosecute the Plaintiff's foreclosure illegally in order to maximize their profit regardless of the risk and devastating financial and emotional consequences to the Plaintiff and his family.

128. Plaintiff has suffered damages as the direct result of the violation of the FDCPA by the Defendant and the actual malice by the Defendant.

Wherefore, the Plaintiff demands judgment against the Defendant in the sum of Six Hundred Thousand ($600,000) in compensatory damages, One Million Dollars ($1,000,000) in punitive damages, and an order from the Court declaring that Plaintiff is released from any alleged obligation to the Defendant.

## COUNT XIV
### (Wrongful Foreclosure Filing)
### Forged Loan Documents

129. Plaintiffs incorporates by reference herein, all of the allegations contained in paragraph one (1) through one hundred twenty eight (128) of this complaint as if fully set forth herein.

130. Maryland Real Property Article 7-105.1 and 7-105.2 mandate that certain notices, documents, statements, and affidavits be provided to mortgagors, homeowners, and third parties during the foreclosure process.  Additionally, Maryland Real Property Article 7-105.1 and 7-105.2 mandate that certain of these notices, documents, statements, and affidavits be filed with the court in which the foreclosure is to be filed or has been filed.

131. Each requirement of 7-105.1 and 7-105.2 is a statutory condition precedent to docketing a foreclosure, conducting a foreclosure sale or ratifying a foreclosure sale.

132. Defendant failed to comply with the provisions of Maryland Real Property Article

7-105.1 and 7-105.2 in that Defendant knowingly and willfully filed false, fabricated, and counterfeit documents in support of the Order to Docket in Plaintiff's foreclosure docket.

133. Each such false, fabricated, or counterfeit loan document was filed in lieu of a loan document or statement required as a condition precedent.

134. Plaintiff suffered damages as a direct result of the failure of the Defendant to comply with the provisions and implementing rules of Real Property 7-105.1 and 7-105.2.

Wherefore, the Plaintiff demands judgment against the Defendant in the sum of Six Hundred Thousand ($600,000) in compensatory damages, One Million Dollars ($1,000,000) in punitive damages, and an order from the Court declaring that Plaintiff is released from any alleged obligation to the Defendant.

## DEMAND FOR A JURY TRAIL

Plaintiff, Winfield T. Willis, demand a jury trail in this action.

Respectfully submitted,

Winfield T. Willis
(410) 448-1511

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY, that on this 16th day of  October 2014, a copy of the

Complaint and Demand for Jury Trail was mailed, first class postage pre-paid, to:


Green Tree Services, LLC
c/o The Corporation Trust Incorporated
351 West Camden Street
Baltimore, MD 21201

    Defendants Resident Agent
      in Maryland



*Winfield D Willis*
Winfield T. Willis (410) 448-1511
2816 Hillsdale Road,
Baltimore, MD 21207